[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16811
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-24125-DPG

VEOLIA TRANSPORTATION SERVICES, INC.,

Plaintiff - Counter Defendant - Appellant,

versus

UNITED TRANSPORTATION UNION,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 16, 2017)

Before JORDAN, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Veolia Transportation Services, Inc. (Veolia) appeals the district court's grant of summary judgment to the United Transportation Union (the Union) which foreclosed its effort to vacate an arbitration award in favor of the Union. Recognizing that judicial review of arbitration results is very limited and challenges are rebuffed in "all but the most unusual circumstances," *Wiregrass Metal Trades Council v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1086 (11th Cir. 2016), Veolia asserts the arbitrator acted outside the scope of his authority and impermissibly added to the scope of the parties' collective bargaining agreement. In addition, Veolia contends it is impossible to comply with the award. In reality, however, Veolia is contesting the merits of the arbitrator's decision, and the district court did not err in granting summary judgment in favor of the Union. Accordingly, after review,[1] we affirm.

## I. BACKGROUND

Veolia operates the Tri-Rail commuter rail system in South Florida pursuant to a contract with the South Florida Regional Transportation Authority. The Union represents Veolia's train and engine service employees. Accordingly, Veolia and the Union are parties to a collective bargaining agreement (the CBA) governing the terms and conditions of the Union members' employment. In particular, the CBA

---

[1] We review the district court's grant of summary judgment to the Union *de novo*. *Wiregrass*, 837 F.3d at 1087.

2

provides a process by which employee misconduct is investigated and punished, and includes an appeal structure culminating in arbitration.

Richard C. Beall (Beall) was a Locomotive Engineer on a commuter train operated by Veolia on the Tri-Rail system between West Palm Beach and Miami, Florida. At the time, CSX Transportation (CSX) owned and controlled the tracks on which the Tri-Rail system operates. Veolia and its engineers were required to comply with CSX rules, one of which is Operating Rule 44. Rule 44 prescribes certain procedures an engineer must follow when his train passes trackside signs. On September 26, 2012, Veolia and CSX were conducting efficiency tests and placed a sign covered by Rule 44 next to the tracks on which Beall's train was scheduled to travel. As his train passed the sign, Beall failed to notify a dispatcher and to slow his train's speed, both of which he was required to do under the rule. Veolia launched a formal internal investigation and determined Beall violated Rule 44. The company terminated him on November 12, 2012, and his Engineer certificate was revoked for six months.

The Union appealed the decision. After the internal grievance procedures were exhausted, the parties submitted the matter to an arbitrator in accordance with the CBA. The parties posed the following question to the arbitrator: "Did [Veolia] properly find [Beall] in violation of CSX Operating Rule 44 and was [Beall's]

3

termination from service proper and in accordance with the Parties' Collective Bargaining Agreement?"

In an award dated October 14, 2013 (the 2013 Award), the arbitrator affirmed the result of Veolia's internal disciplinary process to the extent he found Beall violated Rule 44. He determined, however, that termination was too severe a penalty. The arbitrator stated that although Beall's violation was "serious and properly warrant[ed] serious discipline," dismissal was "excessive" and "not commensurate with the infraction" in light of Beall's forty-three years of experience, fifteen of which he served as a Tri-Rail commuter operator, and the fact that no damage or injury resulted from the infraction. The arbitrator determined a six-month disciplinary suspension was appropriate instead, and he ordered Beall reinstated and made whole for back pay and benefits outside the six-month disciplinary period.

One month later, Veolia filed this suit in the Southern District of Florida seeking to vacate the 2013 Award on the grounds that it conflicted with the plain terms of the CBA and that the arbitrator acted outside the scope of his authority. The parties filed cross motions for summary judgment on August 11, 2014. In its memorandum in support of its motion, Veolia noted almost in passing that it was undisputed that, in addition to the discipline Veolia had imposed, CSX had independently barred Beall from serving on its rails. It was therefore impossible

for Veolia to reinstate Beall because it could not put him back to work on Tri-Rail track. The upshot of that fact, Veolia claimed, was that the 2013 Award should be vacated. The district court determined the 2013 Award did not resolve this particular factual contention, so it remanded the case to the arbitrator to "address the issue of CSX Transportation's disqualification of [Beall]." It held the parties' cross motions for summary judgment in abeyance pending the final disposition of the issue.

In a June 2015 proceeding on remand (the 2015 Proceeding), the arbitrator found no grounds for altering the 2013 Award. Although there was testimony indicating that CSX would have made its own judgment as to Beall's eligibility to return to work on the Tri-Rail system independently of Veolia's decision, that evidence "went untested because [Veolia] never approached CSX to request the prohibition be lifted;" instead, Veolia complained in federal court. On the record before him, the arbitrator determined "the evidence [was] sufficient to find that both [Veolia] and the [Union] had reason to understand that [Beall's] reinstatement depended on his prohibition being lifted" and that it was "reasonable to expect [Veolia] to make a good faith effort to approach [CSX] to have the prohibition lifted." In addition, the arbitrator noted that in March 2015, CSX's administrative authority ceased when its contract with the Florida Department of Transportation terminated, changing the factual landscape against which Veolia's impossibility

argument had been made.  In short, the evidence did not show on balance that reinstating Beall was impossible as Veolia claimed.

The district court subsequently reopened the case and considered the parties' motions for summary judgment.  It declined to vacate the 2013 Award or the 2015 Proceeding (together, the Arbitration Award) under the highly deferential standard of review, finding the CBA was "open to an interpretation that the arbitrator can modify an employee's discipline through the grievance process."  Accordingly, the court denied summary judgment to Veolia, granted summary judgment to the Union, and ordered Veolia to comply with the Arbitration Award.  Veolia appealed.

## II. DISCUSSION

Under the CBA, employees are not to be disciplined without "a fair and impartial investigation."  Discipline can be imposed for "just cause," and "depending on the nature of the incident, [penalties] can range from a written reprimand, to suspension, to dismissal."  The agreement does not enumerate specific penalties for specific offenses; rather, the nature of the discipline is dependent on the nature of the incident, as determined in the investigation.  If the employee is disciplined as a result of an investigation, he may appeal the investigation decision.  The first several steps of the appeal are internal.  However, if the decision of the final internal appeal, rendered by the General Manager,

6

remains disputed, either party may appeal to an impartial arbitrator selected in accordance with the CBA.

## A. *Whether the Arbitrator Erred in Rendering the 2013 Award*

Veolia contends the arbitrator erred in rendering the 2013 Award for two reasons. First, the arbitrator exceeded the scope of the question presented to him. In Veolia's view, the arbitrator was asked only to determine if Beall violated CSX Operating Rule 44, and if so whether Veolia's discipline was permitted by the CBA. Veolia argues the parties did not seek a decision as to whether the discipline imposed was appropriate in Beall's case. Notably, Veolia does not suggest the CBA bars arbitrators from modifying discipline imposed in an investigation in general; rather, Veolia merely asserts that the parties did not authorize this particular arbitrator to alter Beall's punishment. Second, Veolia contends the arbitrator implicitly added a provision to the CBA in excess of his authority when he held that Beall's punishment was too severe. Veolia quibbles with the language of the 2013 Award in which the arbitrator stated that "the standard to permanently separate [Beall] from his job rises beyond that of finding him guilty of having violated an operating rule," in part because of his lengthy service in the railroad industry. The company imagines this amounted to an amendment to the CBA, since the CBA nowhere provides that Veolia must meet an elevated burden to terminate a longstanding employee.

In light of the highly deferential standard of review applicable in cases such as this one, Veolia's contentions are meritless. "Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1271 (11th Cir. 2015) (characterizing such review as "highly deferential" and "extremely limited"). As Veolia concedes, the CBA permits the arbitrator to modify the discipline imposed on an employee found guilty in an investigation. Indeed, the CBA appears to fully integrate the arbitrator into the grievance process, treating the arbitrator and the rest of the appeal structure nearly identically. Viewing the CBA in this light, nothing about the question presented to the arbitrator indicates his contractually agreed authority to modify punishments was limited as Veolia suggests. The parties asked the arbitrator to determine whether Beall's "termination from service [was] proper and in accordance with [the CBA]." The question presented can be reasonably interpreted to ask the arbitrator to determine not only whether termination was a permissible penalty under the CBA, but also whether it was "proper," i.e., whether it was appropriate under the circumstances. This may even be the most reasonable interpretation against the backdrop of the CBA; in any event, it is not one on which this Court will vacate

8

the award. *See IMC-Agrico Co. v. Int'l Chem. Workers Council*, 171 F.3d 1322, 1326 (11th Cir. 1999) ("It is not our role to review the merits of the arbitrator's interpretation, but only to ask whether it was arguably based on the language of the agreement."); *Wise Alloys*, 807 F.3d at 1271 ("[W]e review a labor arbitration award for 'whether [it] is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority.'" (quoting *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1263 (11th Cir. 1996))).

Veolia's assertion that the arbitrator impermissibly added a provision to the CBA fails for similar reasons. The CBA does not impose a rigid or formulaic penalty structure as Veolia implies. Rather, it states only that "[d]iscipline for just cause, if imposed, depending on the nature of the incident, can range from a written reprimand, to suspension, to dismissal." This malleable standard is broad enough to encompass what the arbitrator did here in weighing Beall's seniority and the absence of any damage resulting from his violation. When he stated that "the standard to permanently separate [Beall] from his job rises beyond that of finding him guilty of having violated an operating rule," the arbitrator was reasonably interpreting and applying the concept of "just cause . . . depending on the nature of the incident" as provided in the CBA, not writing in a new provision. *See Wise Alloys*, 807 F.3d at 1272 ("To prevail in vacating an arbitration award, the

9

challenger must refute every reasonable basis upon which the arbitrator may have acted." (quotation omitted)).  Nothing about the award "contradict[ed] the express language of the agreement" or added any term to it.  *IMC-Agrico*, 171 F.3d at 1325.

## B.  Whether Reinstatement Was Impossible

Veolia next contends the Arbitration Award cannot be enforced because CSX suspended Beall.  Thus, even if Veolia reinstated him, it would be powerless to put him back to work on CSX tracks.  As Veolia concedes, however, the arbitrator already addressed this issue at the direction of the district court on remand in the 2015 Proceeding.  Once again, Veolia is in essence seeking to relitigate the case because it is unsatisfied with the result of the arbitration to which it agreed to submit.  But we "do not sit to hear claims of factual or legal error by an arbitrator."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).  Veolia had its chance before the arbitrator to show the facts on the ground precluded Beall's reinstatement.  It lost, and neither this Court nor the district court is in a position to reevaluate the arbitrator's decision.  *See Garvey*, 532 U.S. at 509 ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."); *Wise Alloys*, 807 F.3d at 1271 ("We do not review claims of factual or legal error by an arbitrator in the same manner as we review the decisions of

district courts."). The arbitrator determined that Veolia never attempted to have CSX revoke Beall's suspension, and noted that by the time of the 2015 Proceeding, CSX's contract had expired and it no longer controlled the tracks in any case. Pursuant to his power to modify Beall's punishment, the arbitrator found Veolia should not have fired him and ordered the company to take the necessary measures to reinstate him. We "have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim," and so we will not vacate the Arbitration Award on these grounds. *Garvey*, 532 U.S. at 509 (quoting *Misco*, 484 U.S. at 37).

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**