[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10189
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-21850-JEM


BARCLAYS CAPITAL INC.,

                                        Plaintiff - Appellant,

versus

RAFAEL URQUIDI,
ILEANA D. PLATT,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 19, 2019)


Before JILL PRYOR, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Barclays Capital Inc. ("Barclays") appeals the district court's confirmation of an arbitration award in favor of Ileana Platt and Rafael Urquidi ("Claimants") and the denial of Barclays's motion to vacate this award. No reversible error has been shown; we affirm.

## I. Background

Briefly stated, Claimants -- experienced investment brokers -- were hired by Barclays in November 2012. Claimants brought with them established books of business composed almost exclusively of clients residing in Latin America.

The terms of Claimants' employment were set forth in their respective signed offer letters ("Offer Letters"). The Offer Letters described in detail the commission-based compensation and bonuses for which Claimants would be eligible. The Offer Letters also included an arbitration clause providing for arbitration of "any dispute or controversy arising under or in connection with your employment."

Pertinent to this appeal, the Offer Letters also provided an option for Claimants to take out an unsecured personal loan from Barclays Bank PLC, an affiliate of Barclays.  As long as Claimants remained employed by Barclays, Barclays agreed to pay the seven annual installments of principal and interest due on the loans.  If Claimants' employment with Barclays ended "for any reason," however, Claimants were "responsible for all remaining payments of principal and interest pursuant to the terms of [their] loan with the Bank."

Claimants each opted to take out a personal loan in conjunction with accepting Barclays's offer of employment.  The loans were memorialized in Promissory Notes attached to the Offer Letters.  The Notes provided that Claimants' "continued employment by Barclays is a material condition" of the loans and that, if Claimants' employment ended "for any reason," the unpaid principal and interest would become immediately due and payable.

After joining Barclays in November 2012, Claimants began transferring their established Latin American clients and accounts to Barclays.  Less than a year later, however, Barclays announced its decision to terminate all business operations in Latin America.  As a result of this decision, Claimants were unable to grow or to maintain their business and lost established clients and commissions. Claimants later resigned their employment with Barclays in early 2014.

3

Shortly after leaving Barclays, Claimants filed an arbitration demand with the Financial Industry Regulatory Authority ("FINRA"), asserting against Barclays claims for breach of contract and for unjust enrichment.[1]  Claimants contended that Barclays's unilateral decision to terminate business in Latin America materially altered the terms of Claimants' agreed-upon compensation structure and breached the implied covenant of good faith and fair dealing.  Claimants also sought a declaratory judgment that the amount due under the Notes would be subject to equitable setoff such that Claimants would "owe nothing on the Notes and that Barclays [would] take nothing in this arbitration."  Barclays filed a counterclaim for enforcement of the Notes, seeking repayment of approximately $3.8 million in outstanding loan amounts.

During the 3-day arbitration hearing, Claimants argued (relying in part on two recent FINRA decisions) that Barclays's decision to terminate business in Latin America constituted such a dramatic, unilateral change in the terms of Claimants' employment contracts that Barclays should be precluded from enforcing the Notes.  Claimants also sought compensatory damages totaling $4.5 million for lost clients and commissions.  In response, Barclays contended that the

---

[1] Claimants also asserted a claim for negligent misrepresentation, which was later withdrawn.

plain language of the Offer Letters and the Notes mandated -- without exception -- repayment of the outstanding loan amounts.

The 3-member arbitration panel issued a unanimous arbitration award in February 2015. The panel granted Claimants' request for a declaration that Claimants owed nothing under the Notes. The panel also denied Claimants' remaining requests for relief and denied Barclays's counterclaim.

Barclays then moved the district court to vacate the arbitration award. Barclays alleged that the arbitration panel exceeded its power and, thus, a vacatur was warranted under 9 U.S.C. § 10(a)(4).[2] The district court denied Barclay's motion and confirmed the arbitration award.

## II. Discussion

"We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions de novo." Frazier v. CitiFinancial Corp., 604 F.3d 1313, 1321 (11th Cir. 2010). "There is a presumption under the [Federal Arbitration Act ("FAA")] that arbitration awards

---

[2] Barclays also asserted an argument about arbitrator bias under section 10(a)(2); Barclays has abandoned expressly that argument on appeal.

5

will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." Id. (quotations omitted).

Under the FAA, an arbitration award may be vacated in "only four narrow circumstances." Id. Pertinent to this appeal, an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The FAA provides the "exclusive means by which a federal court may upset an arbitration panel's award." White Springs Agric. Chems., Inc. v. Glawson, 660 F.3d 1277, 1280 (11th Cir. 2011).

The Supreme Court has stressed that judicial review of an arbitration award is very limited in scope. See Oxford Health Plans, LLC v. Sutter, 569 U.S. 564, 568 (2013). A party seeking relief under section 10(a)(4) "bears a heavy burden." Id. at 569. "It is not enough to show that the arbitrator committed an error -- or even a serious error." Id. Instead, a court may overturn an arbitrator's award "only if the arbitrator acts outside the scope of his contractually delegated authority - issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract." Id. (alterations and quotations omitted). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract

6

must stand, regardless of a court's view of its (de)merits." Id. (quotations omitted). Thus, the "sole question" for a reviewing court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Id.

We have said that "few awards are vacated [under section 10(a)(4)] because the scope of the arbitrator's authority is so broad." Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc., 837 F.3d 1083, 1087 (11th Cir. 2016). In considering a party's argument that the arbitrator exceeded his powers, we are guided by two principles. Id. First, "we must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is." Id. Second, "an arbitrator may not ignore the plain language of the contract." Id. at 1088 (quotations omitted). But even when the contract language is unambiguous, "an arbitrator's award that appears contrary to the express terms of the agreement may nevertheless be valid if it is premised upon reliable evidence of the parties' intent." Id. at 1088-89.

Where an arbitrator fails to articulate the rationale for his decision, we will overturn the award only when it is "apparent" that the arbitrator exceeded his authority. Id. at 1090-91. "A mere ambiguity in the opinion accompanying an

7

award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." Id. at 1091.

As an initial matter, neither party challenges the enforceability of the arbitration clause contained in the Offer Letters. Nor do the parties contend that the matters raised in this case fall outside the scope of that arbitration clause. That the arbitration panel had authority to rule on the parties' claims and counterclaim is thus undisputed.

The arbitration panel here did what the parties requested: the panel made a determination about Claimants' obligation to repay the outstanding loan amounts under the Notes and about Claimants' entitlement to additional damages. In doing so, the panel considered expressly the parties' pleadings, testimony, and evidence. Resolution of the parties' claims necessitated consideration not only of the plain language of the Offer Letters and Notes, but also about the enforceability of that contract language in the light of Barclays's alleged breach of its duties. The record included evidence and argument both about the pertinent contract language and about the parties' intentions in entering into the employment relationship. We are thus persuaded that the arbitration panel at least arguably interpreted and applied the underlying contracts in making its award determination.

8

We reject Barclays's contention that the arbitration panel ignored the plain language of -- and modified impermissibly -- the underlying employment agreements by "forgiving" Claimants' debt under the Notes. This case is not one of mere contract interpretation: the plain meaning of the language in the Offer Letters and Notes is not in dispute. Instead, the central issue before the arbitration panel was whether Barclays's decision to terminate its Latin American business constituted such a "dramatic unilateral change" to the material conditions of Claimants' employment that it rendered the Notes unenforceable.

The arbitration award recited Claimants' request for "a declaratory judgment that any amount due under their 'loan' agreements would be subject to an equitable set-off and that they would owe nothing under the Notes." In announcing the award, the panel said that "Claimants' requests that they owe nothing to Respondent pursuant to Claimants' signed Notes executed on November 26, 2012, are granted and all debt owed by Claimants on the Notes executed on November 26, 2012, is forgiven." The panel thus acknowledged the Notes but concluded that Claimants, given the circumstances, were not liable to pay any debt evidenced by the Notes. Although the panel provided no written reasons for its award, we can infer reasonably that the panel agreed with Claimants' position that Barclays's conduct rendered the Notes unenforceable. The enforceability of the Notes was a

9

matter that was properly before the arbitration panel.  See Wiand v. Schneiderman, 778 F.3d 917, 925 (11th Cir. 2015) ("Disputes regarding whether a contract was performed in accordance with its terms, like disputes about the validity of the contract as a whole, go to the arbitrator.").  Whether the resulting decision was legally or factually erroneous is beyond the scope of our limited review.

Considering the arbitration award and the record as a whole, we cannot say that it is "apparent" that the panel acted in excess of its power.  Barclays has thus failed to satisfy its heavy burden of showing that a vacatur is warranted under section 10(a)(4).

AFFIRMED.