# Third District Court of Appeal

## State of Florida

Opinion filed November 10, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2249
Lower Tribunal No. 21-16912
_____

**David C. Metalonis,**
Appellant,

vs.

**Boies Schiller Flexner LLP,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Leto Law Firm, and Matthew P. Leto, and Charles P. Gourlis, for appellant.

Boies Schiller Flexner LLP, and Andrew S. Brenner, James W. Lee, Samantha Licata, and Michael C. Mikulic, for appellee.

Before EMAS, LINDSEY, and GORDO, JJ.

LINDSEY, J.

Appellant David Metalonis appeals from a final judgment confirming an Arbitration Award in favor of Appellee Boies Schiller Flexner, LLP (the "Law Firm"). The underlying Award found in favor of the Law Firm on its claim for contingency fees against Metalonis, a former client. On appeal, Metalonis argues the Arbitrator exceeded his authority. He did not. Because the Arbitrator only addressed issues covered by the broad arbitration provision and put squarely before him by the parties, and because he did not impermissibly modify the parties' Engagement Agreement, we affirm.

## I.    BACKGROUND

In February 2018, Metalonis hired the Law Firm to represent him in an action alleging frustration of a business opportunity involving undeveloped land near the Hard Rock Stadium. The parties signed an Engagement Agreement in which Metalonis agreed to pay a contingency fee for any cash or non-cash sum recovered. The parties also agreed that any dispute "arising from or relating to the Engagement . . . shall be finally settled by binding, confidential arbitration . . . ."[1]

---

[1] The arbitration provision clearly notified Metalonis, in bold text, that "**[b]y entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury.**"

2

The Law Firm represented Metalonis in an action against Eastgroup Properties, Inc. After over a year of litigation, Metalonis and Eastgroup attended mediation and entered into a Settlement Agreement in which Eastgroup agreed to pay Metalonis $2.45 million and transfer a two-acre parcel of land to Metalonis, subject to certain conditions precedent. After signing the Settlement Agreement, Metalonis instructed the Law Firm to argue—in response to Eastgroup's Motion to Enforce—that the Settlement Agreement was unenforceable. The trial court ruled against Metalonis, and the case was dismissed. Metalonis, through new counsel, appealed, and this Court dismissed the appeal. See Metalonis v. Eastgroup Props., Inc., 298 So. 3d 1215, 1216 (Fla. 3d DCA 2020) (holding that Metalonis's voluntary dismissal divested this Court of appellate jurisdiction).

Metalonis hired new counsel to assist with the transfer of the two-acre parcel. Meanwhile, the Law Firm initiated arbitration to collect its contingency fee, which Metalonis refused to pay.[2] Metalonis responded with a legal malpractice Counterclaim (for approximately $30 million). Several months after the Law Firm initiated arbitration, and nearly 18 months after the Settlement Agreement, Metalonis complied with the necessary

---

[2] The Law Firm initiated arbitration in July 2021, more than a year after the Settlement Agreement was signed.

3

conditions precedent, and Eastgroup transferred the two-acre parcel. At the time of settlement, Metalonis admitted the property was worth at least $2 million,[3] but Metalonis claims the property was only worth $50,000 when it was finally transferred.

In March 2021, the Arbitrator presided over a five-day evidentiary hearing. The parties collectively called eleven live witnesses, submitted 6 witness depositions, and introduced over 225 documents into evidence (totaling over 6,500 pages). The Arbitrator ultimately issued a detailed 120-page Arbitration Award, with hundreds of citations to the record.

In arbitration, the Law Firm sought a contingency fee based on both the cash and non-cash sums Metalonis recovered (the $2.45 million and the value of the two-acre parcel). With respect to the cash amount, Metalonis argued the Law Firm could not recover because it engaged in legal malpractice. In essence, Metalonis argued he was tricked into signing the Settlement Agreement. The Arbitrator rejected this argument and dismissed Metalonis's malpractice Counterclaim with prejudice, concluding "that the central tenets of Metalonis's story, the very foundation for his malpractice case, are not true. Metalonis appears to be the ultimate salesman, willing to

---

[3] In support of his malpractice counterclaim, Metalonis argued the value of the property was $32 million, with $30 million attributed to potential billboard advertising rights.

4

tell whatever puffery he thinks will serve his immediate financial interests."

Metalonis does not challenge the dismissal of his Counterclaim.

With respect to the contingency fee for the parcel of land, Metalonis raised two arguments that are relevant here. First, Metalonis argued he did not have to pay the Law Firm a contingency fee based on the value of the two-acre parcel because the Engagement Agreement gave him the option of giving the Law Firm an undivided interest in the property equal to the applicable contingency percentage.[4] Second, Metalonis argued the parcel should be valued at $50,000, which is the value he claimed the parcel had when it was transferred to him.

Importantly, these arguments were put squarely before the Arbitrator, and neither party argued the Arbitrator lacked authority to resolve these issues. The Arbitrator ultimately rejected Metalonis's arguments and

---

[4] The relevant language is as follows:

> If the Litigation is settled, in whole or in part, by the Client's receipt of anything of value other than cash, the Firm shall be entitled to receive, at Client' s option. (a) payment in cash of the applicable contingent percentage set forth above . . . or (b) an undivided interest in any property received by Client, equal to the applicable contingent percentage above, plus payment of the applicable contingent percentage of any cash received as a result of settlement.

awarded a contingency fee to the Law Firm based on the value of the parcel at the time of settlement, which it was undisputed was at least $2 million.

After issuance of the Final Arbitration Award, Metalonis still refused to pay. Consequently, the Law Firm filed a Petition in the circuit court to confirm the award. In response, Metalonis argued the Arbitrator exceeded his authority. The circuit court granted the Law Firm's Petition and entered final judgment. Metalonis timely appealed.

## II. ANALYSIS

On appeal, Metalonis maintains that the Arbitrator exceeded his authority. The standard of review is de novo. See Nash v. Fla. Atl. Univ. Bd. of Trustees, 213 So. 3d 363, 366 (Fla. 4th DCA 2017) ("Whether an arbitrator exceeded his authority within the meaning of [the Florida Arbitration Code] is an issue of law subject to de novo review."); Gherardi v. Citigroup Glob. Mkts. Inc., 975 F.3d 1232, 1236 (11th Cir. 2020).

Though our standard of review is de novo, the scope of our review is "very limited, with a high degree of conclusiveness attaching to [the] arbitration award." Regalado v. Cabezas, 959 So. 2d 282, 284 (Fla. 3d DCA 2007), as modified on denial of reh'g (July 10, 2007) (quoting Marr v. Webb, 930 So.2d 734, 737 (Fla. 3d DCA 2006)); see also Gherardi, 975 F.3d at 1237 ("Judicial review of arbitration decisions is 'among the narrowest known

6

to the law.'" (quoting Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1286 (11th Cir. 2017))).

In support of his position, Metalonis advances three arguments. First, he argues that the Federal Arbitration Act applies, not the Florida Arbitration Code. Second, he argues the Arbitrator exceeded his authority by denying Metalonis the option to provide the Law Firm with an undivided interest in the property instead of a cash payment based on value. Third, Metalonis argues the Arbitrator exceeded his authority by assigning the two-acre parcel its value at the time of settlement as opposed to when it was transferred. We are not persuaded by these arguments. Cf. Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc., 837 F.3d 1083, 1085–86 (11th Cir. 2016) ("A dispute involving the interpretation of a collective bargaining agreement was submitted to an arbitrator, as both parties had agreed their disputes would be. As usually happens, the losing party was not happy with the loss. As too often happens, instead of accepting it and moving on, the loser moved the [trial court] to set aside the arbitration award . . . ." (citation omitted)).

## A. The Florida Arbitration Code and the Federal Arbitration Act

The Arbitrator applied the Revised Florida Arbitration Code (the "FAC"). Metalonis argues the Federal Arbitration Act (the "FAA") should

7

apply instead. "In Florida, an arbitration clause in a contract involving interstate commerce is subject to the Florida Arbitration Code (FAC), to the extent the FAC is not in conflict with the FAA." Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 463–64 (Fla. 2011). Here, the underlying transaction has to do with undeveloped land in Florida and does not, on its face, involve interstate commerce. See Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc., 154 So. 3d 1115, 1125 (Fla. 2014) ("To determine if a transaction involved interstate commerce, courts look to whether the transaction in fact involved interstate commerce, even if the parties did not contemplate an interstate commerce connection."). Regardless, Metalonis has failed to satisfy the heavy burden of showing that the Arbitration Award should be vacated under either the FAC or the FAA.

Under the FAC, one of the specified grounds for vacating an arbitration award is if "[a]n arbitrator exceeded the arbitrator's powers[.]" § 682.13(1)(d), Fla. Stat. (2022). Florida courts interpret this ground to be "jurisdictional in nature and . . . in reference to the scope of authority given to an arbitrator in the arbitration agreement." See, e.g., Visiting Nurse, 154 So. 3d at 1137.[5]

---

[5] In Visiting Nurse, the Court interpreted an older version of Florida's Arbitration Code. However, the Court acknowledged the revised language and concluded that the result would be the same under either version. Id. at 1137 n.15.

8

In other words, an arbitrator exceeds his or her power only when he or she goes beyond the authority granted by the parties. Id.; Metro Dade Firefighters, Int'l Ass'n of Fire Fighters, Local 1403 v. Miami-Dade County, 47 Fla. L. Weekly D1989 (Fla. 3d DCA Sept. 30, 2022); Soler v. Secondary Holdings, Inc., 832 So. 2d 893 (Fla. 3d DCA 2002). Moreover, "[w]hether the arbitrator's decision was legally correct is irrelevant because '[a]n award of arbitration may not be reversed on the ground that the arbitrator made an error of law.'" Metro Dade Firefighters, 47 Fla. L. Weekly at D1991 (quoting Schnurmacher Holding, Inc. v. Noriega, 542 So. 2d 1327, 1329 (Fla. 1989)).

Here, the Arbitrator clearly did not exceed his authority under the FAC because the issues resolved in arbitration were covered by the broad arbitration provision, which encompasses any dispute "arising from or relating to the Engagement[.]" Further, the parties placed these issues squarely before the Arbitrator. Indeed, neither party objected to the Arbitrator's authority to resolve the issues until Metalonis was displeased with the Award. See id. (holding that the arbitrator did not exceed his power because he decided only the issues submitted to arbitration); Vill. at Dolphin Com. Ctr., LLC v. Constr. Serv. Sols., LLC, 143 So. 3d 942, 945 (Fla. 3d DCA 2014) (holding that an arbitration panel did not exceed its power in

9

deciding an enforceability issue because the issue was submitted to the panel).

Assuming, for the sake of argument, that the FAA applies, the outcome is the same. See Visiting Nurse, 154 So. 3d 1115 (holding that an arbitration panel did not exceed its power under the FAA or FAC). The relevant provision in the FAA uses nearly the same language as its Florida counterpart. Pursuant to 9 U.S.C. § 10(a)(4), an arbitration award may be vacated "where the arbitrators exceeded their powers . . . ." As with the FAC, this ground is jurisdictional and involves making sure the issues resolved in arbitration fall within the scope of the arbitration agreement. See Gherardi, 975 F.3d at 1238 ("[I]n § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved.").

In Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013), the Supreme Court of the United States explained the "heavy burden" for vacating an arbitration award pursuant to § 10(a)(4) as follows:

> A party seeking relief under that provision bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." [Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)]. Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand,

10

regardless of a court's view of its (de)merits. Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Paperworkers v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); internal quotation marks omitted). Only if "the arbitrator act[s] outside the scope of his contractually delegated authority"— issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. Eastern Associated Coal, 531 U.S., at 62, 121 S.Ct. 462 (quoting Misco, 484 U.S., at 38, 108 S.Ct. 364). So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

(Alternations in original).

It is clear the Arbitrator acted within the scope of his contractually delegated authority to resolve a dispute related to the Engagement Agreement. Despite this, Metalonis focuses extensively on whether the Arbitrator *interpreted* the Engagement Agreement. More specifically, Metalonis argues the Arbitrator did not interpret the Agreement but instead ignored the language of the Agreement and impermissibly modified it. This inquiry requires us to consider "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [he] got its meaning right or wrong." Gherardi, 975 F.3d at 1238 (quoting Wiregrass, 837 F.3d at 1088).

**B.     The Client's Option**

11

When a contingency fee is owed on anything of value other than cash (such as the parcel of land), the Engagement Agreement provides that the Law Firm is entitled to receive, *at the Client's option*, a cash payment based on value or an undivided interest in the property. See supra note 4. Metalonis contends the Arbitrator did not interpret the Agreement because he was not permitted to select the manner in which to compensate the Law Firm. We disagree.

In its Award, the Arbitrator recognized that at no time prior to the Law Firm bringing its claim, which was over one year after settlement, did Metalonis elect any option; he simply refused to pay. Indeed, at the time of the Award, "he still has not formally done so, apparently waiting to see how the instant Arbitration resolved." Though Metalonis did not formally select an option, the Court found he elected to pay cash based on value by having the Law Firm "commit to a value of that land for the purpose of computing its potential contingency fee."[6] Id. Consequently, the Arbitrator did not impermissibly modify the parties' Engagement Agreement. He considered

---

[6] Indeed, the record shows that at various points in the arbitration proceedings, Metalonis claimed if he lost, he would pay the fee award based on the value of the property. It was not until the Arbitrator valued the property at $2 million that Metalonis took a different position.

12

the evidence and determined that even though Metalonis did not formally elect an option, he elected to pay cash by his actions.

## C. Valuation of the Parcel

Metalonis also argues the Arbitrator exceeded his authority by assigning value to the property at the time of settlement as opposed to when the property was transferred. According to Metalonis, the Agreement requires the property to be valued at the time it is received. However, Metalonis ignores language in the Agreement that could support a valuation at the time of settlement: "**If the Litigation is settled, in whole or in part**, by the Client's receipt of anything of value other than cash, the Firm shall be entitled to receive, at Client's option. (a) payment in cash of the applicable contingent percentage set forth above of (i) **the present value of any noncash consideration** . . . ." At most, the Engagement Agreement is ambiguous as to whether the value of the property is to be calculated at the time litigation was settled and Metalonis was awarded the parcel or at the time it was finally transferred.[7] Accordingly, the Arbitrator did not modify the Agreement; he arguably interpreted it.

## III.    CONCLUSION

---

[7] The Award found that the delay of the transfer was solely Metalonis's fault and not the Law Firm's.

"Everyone supposedly loves arbitration. At least until arbitration goes badly." Saturn Telecomms. Servs., Inc. v. Covad Commc'ns Co., 560 F. Supp. 2d 1278, 1279 (S.D. Fla. 2008). This appeal is yet another instance of a dissatisfied party attempting to "convert arbitration losses into court victories." See Wiregrass, 837 F.3d at 1092 (quoting B.L. Habert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913 (11th Cir. 2006)). "The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later." Id. (quoting B.L. Habert, 441 F.3d at 913). Because the Arbitrator did not exceed his authority, we affirm.

Affirmed.