[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13181

_____

D.C. Docket No. 1:18-cv-20969-UU

CHRISTIAN S. GHERARDI,

Plaintiff-Appellant,

versus

CITIGROUP GLOBAL MARKETS INC.,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2020)

Before MARTIN, GRANT, and LAGOA, Circuit Judges.

GRANT, Circuit Judge:

Christian Gherardi won a substantial arbitration award against his former

employer, Citigroup Global Markets.  Unhappy with its loss, Citi sought vacatur in

federal court.  Citi argued that because Gherardi had been an at-will employee, the

arbitrators exceeded their powers by finding that he had been wrongfully

terminated.  The district court agreed.  Gherardi's appeal presents two questions of contract interpretation.  First, did the parties agree to arbitrate wrongful termination disputes?  Second, was Gherardi a purely at-will employee, or did some provision in his agreements with Citigroup offer a way to contest his treatment?  Our answer to the first, much easier question relieves us of the need—and the authority—to answer the second question.  Citi and Gherardi agreed to arbitrate *all* disputes about Gherardi's employment.  Under the Federal Arbitration Act, the merits of Gherardi's dispute were thus committed to the arbitrators.  Citi does not get a mulligan in federal court because it identifies a possible legal error in arbitration.  No doubt this is a tough rule, but it applies to employer and employee alike.  The district court erred by substituting its own legal judgment for that of the arbitrators.  We reverse its vacatur of the award.

## I.

For roughly two decades, Christian Gherardi was a Miami-based broker and investment advisor for Citi.  By all accounts, he was a star performer.  Over the last five years of his employment, Gherardi never earned less than $750,000.  But despite his financial success, Gherardi had a few problems at the office.

According to Citi, Gherardi engaged in "inappropriate and abusive behavior towards colleagues."  In June of 2015, Gherardi received a "final warning" letter reprimanding him for an incident where he was "aggressive towards a fellow employee and shouted profane language."  Some five months later, Gherardi emailed Citi's Human Resources Department threatening to challenge the warning letter in arbitration.  Citi fired him some three days later.

2

Gherardi initiated arbitration against Citi.  He argued that because Citi feared that he would join a competitor firm—and take his 500–600 clients with him—it tried to make him unemployable by firing him "for cause."  Among other things, Gherardi brought claims for defamation based on Citi's explanation of termination, wrongful termination in violation of the anti-retaliation provision, and wrongful termination in violation of "the common law of securities arbitration, which provides that registered persons are not at-will employees."  He sought $16.5 million in damages.

At the time of Gherardi's termination, he and Citi were parties to three relevant agreements: the 2015 Citi U.S. Employee Handbook, an Employment Arbitration Policy (appended to the Handbook), and a Dual Employment Agreement.  Within these three agreements, five provisions are especially relevant:

- *First*, the Dual Employment Agreement said that Gherardi was an at-will employee.  This meant that his employment could be "terminated at any time and for any reason or no reason, not otherwise prohibited by law, by any party."

- *Second*, the Handbook noted that "[e]xcept for the Employment Arbitration Policy, nothing contained in this Handbook, nor the Handbook itself, is a contract of employment."

- *Third*, the Arbitration Policy required "all employment-related disputes" between Gherardi and Citi to be arbitrated "under the auspices of the Financial Industry Regulatory Authority, Inc."

- *Fourth*, the Arbitration Policy said that it did not "constitute, nor should it be construed to constitute, a waiver by Citi of its rights under the 'employment-at-will' doctrine nor" did "it afford an employee or former employee any rights or remedies not otherwise available under applicable law."

3

- *Fifth*, the Arbitration Policy stated that "[r]etaliation against employees who file a claim under this Policy, including claims regarding the validity of this Policy or any provision thereof, is expressly prohibited."

The arbitration panel unanimously awarded Gherardi nearly $4 million, including $3,452,000 as compensatory damages for wrongful termination. The panel did not make specific findings or explain its reasoning, but it was not legally required to do so. Gherardi moved to confirm the award in federal district court. Citi opposed confirmation and moved to vacate.[1] The district court granted Citi's motion to vacate with respect to the wrongful termination portion of Gherardi's award. This appeal followed.

## II.

The district court determined that the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). This was a legal determination that we review de novo. *See Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc.*, 837 F.3d 1083, 1087 (11th Cir. 2016).

## III.

## A.

Litigation is our default adjudicative process, but it is not the only possible process. Private arbitration has existed at least since the Roman Empire. *See* Pandects of Justinian, Bk. 4, Title 8. In the United States, though arbitration has long been available, we have historically seen "widespread judicial hostility to

---

[1] In addition to the ground for vacatur discussed below, Citi argued that the award should be vacated because of the partiality of one of the arbitrators. The district court denied vacatur on this ground, and it is not at issue on appeal.

arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see, e.g.*, *The Atlanten*, 250 F. 935, 937 (2d Cir. 1918), *decree aff'd*, 252 U.S. 313, 316 (1920) (breach of arbitration agreement results in nominal damages); *Wood v. Lafayette*, 46 N.Y. 484, 489–90 (N.Y. 1871) (arbitration agreement can be unilaterally revoked); *Taylor v. Sayre*, 24 N.J.L. 647, 650 (N.J. 1855) (courts can correct an arbitrator's legal error). Eventually, the political branches tired of the courts' uneven enforcement practices. In 1925, Congress passed the Federal Arbitration Act, which said that written arbitration contracts were "valid, irrevocable, and enforceable." 9 U.S.C. § 2.

Under the FAA, federal courts have limited authority to vacate or modify an arbitration award.[2] Vacatur is allowed "only in very unusual circumstances," and those "very unusual circumstances" are described in the statute.[3] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The first three—corruption or fraud, bias, and procedural misconduct—are not at issue in this appeal. *See* 9 U.S.C. § 10(a)(1)–(3). The court below relied on the fourth and final enumerated circumstance, which permits vacatur if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

---

[2] Modification, not relevant here, is governed by 9 U.S.C. § 11.

[3] Like several of our sister circuits, we previously recognized a variety of non-statutory grounds for vacatur, including "manifest disregard of the law." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998); *see Montes v. Shearson Lehman Bros.*, 128 F.3d 1456, 1461 (11th Cir. 1997). But based on the Supreme Court's decision in *Hall Street*, we have since held that these judicially-created grounds violate the FAA. *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010) (applying *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)).

Following Supreme Court precedent, we have interpreted § 10(a)(4)'s language narrowly—very narrowly.  The essential principles of our review, though often recited, are worth repeating.  Judicial review of arbitration decisions is "among the narrowest known to the law."  *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017) (quoting *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007)).  Arbitrators do not exceed their powers when they make errors, even "a serious error."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  That means, however difficult it may be, "we must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong we think that interpretation is."  *Wiregrass*, 837 F.3d at 1087; *see also Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1303 (11th Cir. 2019).  In fact, under our current scheme, an arbitrator's actual reasoning is of such little importance to our review that it need not be explained—the decision itself is enough.  *See O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988).

This rule can be a tough pill to swallow for a losing party subjected to what seems like a legally questionable interpretation.  And courts are understandably protective of our interpretative authority.  But we have good reason to defer to the arbitrator's reasoning, even when it is different than our own.  Arbitration agreements are contracts where the bargain is for the arbitrator's construction of the underlying agreements, rather than for any particular outcome.  *See Oxford*

6

*Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

So if even serious interpretive error does not justify vacatur under § 10(a)(4), that invites an obvious question: *what does?*  Vacatur is permitted only when an arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation and punctuation omitted).  Here are some illustrative examples: awarding relief on a statutory claim when the arbitration agreement allows only for arbitration of contractual claims, *see Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998); failing to give preclusive effect to an issue already (and properly) decided by a court, *see Kahn v. Smith Barney Shearson Inc.*, 115 F.3d 930, 933 (11th Cir. 1997); and forcing a party to submit to class arbitration without a contractual basis for concluding that the party agreed to it, *see Stolt-Nielsen*, 559 U.S. at 684.

As these examples show, a motion under § 10(a)(4) can hardly be thought of as "appealing" the award in the traditional sense.  An arbitration agreement is better thought of as a sort of choice-of-forum clause, and a motion to confirm an arbitration award is very nearly like asking a court to recognize and enforce the judgment of a different court.  In that context, so long as the rendering court had jurisdiction, "the court in which execution is sought will not look behind the judgment and reopen the case on the merits."  Jack H. Friedenthal, Mary Kay Kane, Arthur R. Miller, *Civil Procedure* § 15.7 (5th ed. 2015); *see also V.L. v. E.L.*, 136 S. Ct. 1017, 1020 (2016) (recognition of judgment not required if

7

rendering court did not have jurisdiction).  Similarly, in § 10(a)(4) cases, our review is quasi-jurisdictional: a check to make sure that the arbitration agreement granted the arbitrator authority to reach the issues it resolved.  Parties who agree to arbitrate their disputes "opt out of the court system," so when a party has second thoughts after learning the outcome (as the loser usually does), the options in federal court are limited.  *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006).  A traditional merits appeal is not available; the decision can be challenged "not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate."  *Id.*

Our "sole question" under § 10(a)(4), then, is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether she got its meaning right or wrong."  *Wiregrass*, 837 F.3d at 1088 (punctuation altered) (quoting *Sutter*, 569 U.S. at 569); *see also Inversiones*, 921 F.3d at 1304 (quoting *Comput. Task Grp., Inc. v. Palm Beach Cty.*, 782 So. 2d 942, 943 (Fla. Dist. Ct. App. 2001)) ("[T]he test for whether an arbitrator exceeds his authority is whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue.").  We honor the parties' bargain by enforcing the award if it "even arguably" construes or applies the agreement.  *Sutter*, 569 U.S. at 569 (citation omitted).  A unanimous Supreme Court recently reconfirmed this principle: "a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citation and internal quotation marks

8

omitted).  In short, if an agreement assigns a dispute to arbitration, the arbitrators do not exceed their authority when they resolve that dispute—regardless of the outcome.

Our respect for arbitration (a respect that is demanded by the FAA) means that some interpretive errors will go uncorrected.  But if it were any other way, the efficiency gains of arbitration would be destroyed and arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (citation omitted).  When parties choose arbitration, we cannot override their decision by prioritizing our own answer over that of the arbitrator they selected.  And we are called to accept that the costs of allowing interpretive errors to stand are "far outweighed by the general benefits that accrue . . . from giving arbitral awards a strong presumption of finality."  *Wallace v. Civil Aeronautics Bd.*, 755 F.2d 861, 864 (11th Cir. 1985).

### B.

These principles underlying § 10(a)(4) direct the outcome here.  Citi and Gherardi agreed to mandatory arbitration for "all employment-related disputes, whether initiated by [Gherardi] or by Citi."  The Arbitration Policy also directed that "any dispute as to the arbitrability of a particular claim . . . shall be resolved in arbitration."  Gherardi's wrongful termination claim was "employment-related," so it was validly submitted to the arbitrators.  Because Gherardi's claim was "assigned by contract" to arbitrators, we have no power to rule on the "merits of the underlying claim" for wrongful termination unless they strayed from

9

interpretation of the contract and dispensed their "own brand of industrial justice." *Henry Schein*, 139 S. Ct. at 529 (citation and internal quotation mark omitted); *Garvey*, 532 U.S. at 509 (citation omitted).

This is not a case where the arbitrators flagrantly defied the terms of the parties' contract. The Dual Employment Agreement, of course, said that Gherardi could be "terminated at any time and for any reason or no reason." So one question for the arbitrators was whether anything in the Arbitration Policy called that otherwise clear language into question. Gherardi argues yes: he says the Arbitration Policy's anti-retaliation provision created an exception to the background rule of at-will employment. Citi responds that any question about whether the anti-retaliation provision created an exception to the at-will nature of Gherardi's employment is answered on the previous page, which states that the Arbitration Policy "doesn't constitute . . . a waiver" of Citi's rights under the at-will doctrine.

The ordinary rule in contract interpretation is that an "interpretation giving reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) (citation and quotation marks omitted); *see also* Restatement (Second) of Contracts § 202, comment *d* (1980) ("Where the whole can be read to give significance to each part, that reading is preferred."). The arbitrators may have thought it implausible that the anti-retaliation provision was intended only as aspirational language. *Cf. Wiregrass*, 837 F.3d at 1088–89 (arbitrators are empowered to find implied terms in a contract, even if they seem to contradict the

10

contract's express terms).  The district court obviously thought not.  But the legal merits of the dispute were the arbitrators' concern, not the district court's or ours.

We offer the brief merits evaluation above only to illustrate that the contract language was "open to interpretation."  *Wiregrass*, 837 F.3d at 1088.  Because the dispute's resolution was contractually assigned to the arbitrators and they arguably construed the contract, that is enough.  As Gherardi correctly points out, Citi's argument boils down to a claim "that the arbitrators misinterpreted the governing contract."  This is a far cry from a valid claim that the arbitrators "exceeded their powers."  9 U.S.C. § 10(a)(4).  Because the arbitrators' decision was an interpretation of the contract, rather than an expansion of the arbitrable issues, it stands on appeal.

*    *    *

In valid arbitration agreements, the parties opt out of the public courts and delegate judgment to a private third party.  The resulting decision binds all parties equally—employers and employees, plaintiffs and defendants, winners and losers.  Citi chose to sign an arbitration agreement with Gherardi.  It must now live with the results.

**REVERSED and REMANDED.**

MARTIN, Circuit Judge, dissenting:

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., permits a party to seek vacatur of an arbitration award on the ground that the arbitrators exceeded their powers. Id. § 10(a)(4). The District Court found, correctly I believe, that the arbitrators acted outside of their authority in the arbitration brought by Christian Gherardi against his former employer, Citigroup Global Markets ("Citi"). The majority concludes that because the parties agreed to arbitrate all employment-related disputes, the arbitration panel did not exceed its authority in awarding wrongful termination damages. But a general recognition of the parties' agreement to arbitrate is just the starting point for the Court's inquiry. The majority opinion fails to enforce the limits the parties expressly agreed to place on any arbitration of their employment related disputes. For that reason, I dissent to the majority opinion.

## I.

As the majority recounts, Mr. Gherardi was employed by Citi as a broker and investment advisor based in Miami for about two decades. Toward the end of his employment, Mr. Gherardi faced complaints about his inappropriate behavior. In June 2015, Citi gave him a "final warning" and reprimanded him for aggression toward a fellow employee. Five months later, Mr. Gherardi informed Citi's human resources department of his intention to challenge the warning letter in arbitration. Citi fired Mr. Gherardi three days after he gave this notice and before he could commence the threatened arbitration. Then Mr. Gherardi initiated arbitration

proceedings to challenge, among other things, the termination itself.

The arbitration panel ultimately awarded Mr. Gherardi nearly $4 million, including $3,452,000 in compensatory damages for wrongful termination. Mr. Gherardi moved to confirm the award in federal district court. Citi opposed this motion and moved, in turn, to vacate the award.

The District Court vacated the award's grant of compensatory damages for wrongful termination. The District Court found that the arbitration panel acted outside of its authority under § 10(a)(4) of the FAA, which empowers federal courts to vacate arbitration awards if the arbitrators "exceeded their powers." See Gherardi v. Citigroup Glob. Mkts., Inc., 2018 WL 4864851, at *9–15 (S.D. Fla. July 26, 2018). This is Mr. Gherardi's appeal of that vacatur.

A district court's finding that arbitrators "exceeded their powers" under § 10(a)(4) is a legal determination reviewed by this Court de novo. Wiregrass Metal Trades Council AFL-CIO v. Shaw Envtl. & Infrastructure, Inc., 837 F.3d 1083, 1087 (11th Cir. 2016).

## II.

The FAA permits a district court to vacate an arbitration award if it finds that "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Those powers are, in turn, defined by the parties' contractual agreement to arbitrate. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682–83, 130 S. Ct. 1758, 1774 (2010) ("[A]n arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their

13

disputes to private dispute resolution."). After all, an "arbitrator[] . . . has no general charter to administer justice for a community which transcends the parties," but rather is "part of a system of self-government created by and confined to the parties." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 581, 80 S. Ct. 1347, 1352 (1960) (quotation marks omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."). As with "any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court." Paladino v. Avnet Comput. Techs., Inc., 134 F.3d 1054, 1058 (11th Cir. 1998) (quotation marks omitted).

The majority opinion sets out the two questions of contract interpretation presented by Mr. Gherardi's appeal. The first is whether the parties agreed to arbitrate wrongful termination disputes. The second is whether Mr. Gherardi was a purely at-will employee. I take these questions in turn.

### A. The Parties Agreed to Arbitrate Employment Disputes

No one disputes that these parties agreed to arbitrate employment-related claims. At the time he was fired, Mr. Gherardi's employment with Citi was governed by the 2015 Citi U.S. Employee Handbook (the "Handbook"). The Handbook says "[t]his Handbook contains a policy that requires you and Citi to submit employment-related disputes to binding arbitration (see Appendix A)." Appendix A of the Handbook is the Employment Arbitration Policy, which

14

mandates arbitration of "all employment-related disputes" under the auspices of the Financial Industry Regulatory Authority, Inc.

The majority opinion says all that is required of us is that we ask whether the parties agreed to arbitrate. And the majority never looks into whether the arbitration agreement limited the authority of the arbitrators in any other way. It is true, as the majority says, that "Gherardi's wrongful termination claim was 'employment-related,' so it was validly submitted to the arbitrators." Maj. Op. at 9. But the question of arbitrability is distinct from the scope of arbitral powers under § 10(a)(4). See Oxford §Health Plans LLC v. Sutter, 569 U.S. 564, 569 & n.2, 133 S. Ct. 2064, 2068 & n.2 (2013) (noting that "question[s] of arbitrability . . . include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy," and are distinct from questions of whether an "arbitrator acts outside the scope of his contractually delegated authority [in] issuing an award" under § 10(a)(4) (quotation marks omitted and alterations adopted)).

I believe it is also our obligation to inquire into whether the Employment Arbitration Policy governing this dispute limited arbitral powers in deciding employment-related disputes. This inquiry requires us to assess, as the majority puts it, whether the arbitrators "violated the agreement to arbitrate." Maj. Op. at 8 (quoting Wise v. Wachovia Sec., LLC, 450 F.3d 265, 269 (7th Cir. 2006) (quotation marks omitted)).

15

Two principles govern our examination of the extent of the arbitrators' powers given by the parties' arbitration agreement.  The first principle is whether "the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Sutter, 569 U.S. at 569, 133 S. Ct. at 2068.  "Only if the arbitrator acts outside the scope of his contractually delegated authority— issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract—may a court overturn his determination." Id. (quotation marks omitted and alterations adopted).

The second principle is that "an arbitrator may not ignore the plain language of the contract," such that "an arbitrator may not issue an award that contradicts the express language of the agreement." Wiregrass, 837 F.3d at 1088 (quotation marks omitted and alterations adopted).  "The arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms." Id.

Thus, I am required to examine the text of the parties' arbitration agreement. See Paladino, 134 F.3d at 1061 ("The parties' intent governs what claims are arbitrable, and we look to the wording of the clause itself, giving effect to every provision, to determine the intent.").  The Employment Arbitration Policy plainly says, under a section titled "Statement of Intent," that the arbitration agreement does not "constitute, nor should it be construed to constitute, a waiver by Citi of its rights under the 'employment-at-will' doctrine nor does it afford an employee or former employee any rights or remedies not otherwise available under applicable

16

law." Doc. 17-3 at 10.[1]  The question thus becomes what effect does Mr. Gherardi's (agreed upon) status as an employee-at-will have on the agreement to arbitrate employment-related claims.

I take the words of the Statement of Intent to mean exactly what they say. The agreement to arbitrate did not modify the at-will nature of Mr. Gherardi's employment.  See Paladino, 134 F.3d at 1058 ("[A]n interpretation which gives a reasonable, lawful and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]" (quoting Restatement (First) of Contracts § 203(a) (1981)) (quotation marks omitted)); Goldberg v. Bear, Stearns & Co., 912 F.2d 1418, 1421 (11th Cir. 1990) ("When general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control."). Thus, if arbitrators decided, in disregard of the parties' agreement, that Mr. Gherardi was not an at-will employee, such a decision would amount to a "modifi[cation]" of the "clear and unambiguous terms" the arbitration agreement. Wiregrass, 837 F.3d at 1088.

---

[1] The majority accurately notes that Mr. Gherardi's at-will status is repeated throughout the parties' employment agreements:

- The Dual Employment Agreement states that Mr. Gherardi was an at-will employee, which meant that his employment could be "terminated at any time and for any reason or no reason, not otherwise prohibited by law, by any party."

- The Employee Handbook noted that "[e]xcept for the Employment Arbitration Policy, nothing contained in this Handbook, nor the Handbook itself, is a contract of employment. . . .  Your employment with Citi is at-will, which means it can be terminated by you or Citi at any time, with or without notice . . . ."

17

And that is exactly what happened here.  The arbitration panel awarded Mr. Gherardi compensatory damages for wrongful termination, which is not a form of relief available to at-will employees.  See, e.g., Walton v. Health Care Dist. of Palm Beach Cty., 862 So.2d 852, 855 (Fla. Dist. Ct. App. 2003) ("[A]n 'at will' employee . . . can be terminated for any or no reason and, thus, as a matter of law c[an] not state a cause of action for wrongful termination.").[2]

Our circuit's analysis in Paladino is instructive in understanding why the arbitration panel's award exceeded its authority.  In Paladino, our Court considered an arbitration agreement that included a clause saying generally that the parties "consent[ed] to the settlement by arbitration of any controversy or claim arising out of or relating to [the plaintiff's] employment or the termination of her employment." Paladino, 134 F. 3d at 1057 (alterations adopted).  "Viewed in isolation, this clause appears all-inclusive." Id.  But the "arbitration agreement contain[ed] a second clause, . . . stat[ing] that 'the arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages.'" Id. (alterations adopted).  Our Court recognized the second, more specific clause modified the first, and as a result, concluded that the employee's statutory anti-discrimination claims fell outside of the scope of the arbitration agreement.  The panel held the parties to the terms of their arbitration agreement, which only conferred the power to award contract

---

[2] The parties relied exclusively on Florida law in their post-hearing briefs before the arbitration panel.  Though it remains an open question whether Florida or New York law applies, we need not resolve this issue because, as the District Court noted, "there is no cause of action for wrongful termination of an 'at-will' employee under either Florida or New York law."  See Gherardi, 2018 WL 4864851, at *10 n.9.

18

damages.  Id. at 1057–60.  In light of Paladino, I say the more specific term in the Employment Arbitration Policy, declaring Mr. Gherardi's at-will status, gave the arbitrators no power to modify his status even as it was deciding employment-related disputes.  I reject the majority's conclusion that the parties' agreement to arbitrate job-related grievances implicitly gave the arbitrators power to invalidate other terms of Mr. Gherardi's employment contract.

### B. Mr. Gherardi's Employment Was At-Will

As set out above, the arbitration agreement explicitly recognizes Citi's rights as an at-will employer.  Nevertheless, the majority appears to give credence to an argument offered by Mr. Gherardi as a plausible alternative reading of his agreement that would allow the wrongful termination damages award. Mr. Gherardi argues the arbitration panel could have concluded that the Employment Arbitration Policy's prohibition of retaliation against employees who file an arbitration claim created an exception to the background rule of at-will employment.  There are at least a couple of reasons why I think it wrong to say that the anti-retaliation provision could have served as a basis for the arbitration award.

The Employment Arbitration Policy says "[r]etaliation against employees who file a claim under this Policy, including claims regarding the validity of this Policy or any provision thereof, is expressly prohibited."  So Mr. Gherardi argues the arbitrators may have awarded him damages for wrongful termination under the theory that he was fired in retaliation for initiating arbitration.  Unfortunately for Mr. Gherardi, however, the facts do not line up in support of his theory.  Mr. Gherardi notified Citi of his intention to dispute its final warning on December 10,

19

2015.  And email records show that the disciplinary committee already voted to fire Mr. Gherardi the day before, on December 9, 2015.  Given that Citi's decision to fire Mr. Gherardi had already been made at the time he announced his decision to arbitrate, Citi's decision to fire him could not have been motivated by retaliation.  And another problem for Mr. Gherardi with his retaliation claim is that he only relied on the anti-retaliation provision of the contract in the context of his breach of contract claim.  He did not reference this provision in making his wrongful termination argument to the arbitrators.  To the extent that the majority credits the arbitration panel with having relied on a rationale neither supported by the facts presented to it nor offered by the parties before it, the opinion goes too far.  The anti-retaliation provision simply cannot explain the arbitrators' award.[3]

Since the Employment Arbitration Policy—like the Dual Employment Agreement and the Handbook—establishes that the arbitration agreement does not abridge Mr. Gherardi's at-will status, the arbitrators "ignore[d] the plain language of the contract." Wiregrass, 837 F.3d at 1088.  More specifically, the arbitrators substituted their own judgment on the scope of their authority for the plain words of the Employment Arbitration Policy.  Sutter, 569 U.S. at 569, 133 S. Ct. at 2068.  In so doing, they "issu[ed] an award that simply reflect[ed] [their] own notions of economic justice rather than drawing its essence from the contract." Id. (alterations adopted).  The Federal Arbitration Act calls for courts to step in when this happens.  The District Court therefore properly vacated the compensatory

---

[3] I do not wish to suggest that an anti-retaliation provision in an arbitration agreement could never give rise to a cause of action for wrongful termination, but merely observe that Mr. Gherardi does not establish such a case here.

20

damages award to Mr. Gherardi. See Wiregrass, 837 F.3d at 1088 (stating that an award that "contradicts the express language of the agreement" may be vacated under § 10(a)(4)).

The majority emphasizes that a losing party must accept an arbitration award based even on "a legally questionable interpretation," and that "even serious interpretive error does not justify vacatur under § 10(a)(4)." Maj. Op. at 6, 7. Maybe so, but this is more than just that. Here, the actions of the arbitrators flatly contradicted the express language of a contract between these parties.

*    *    *

The FAA is "motivated, first and foremost, by a congressional desire to enforce agreements into which parties ha[ve] entered." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S. Ct. 1238, 1242 (1985). Because the arbitrators here exceeded their powers under the arbitration agreement, I would affirm the District Court's vacatur of the award under §10(a)(4).

Respectfully, I dissent.

21