DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTHONY PERERA,**
Appellant,

v.

**BOBBY GENOVESE,**
Appellee.

Nos. 4D21-2060 & 4D21-2755

[July 20, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin Bidwill, Judge, and Renatha Francis, Judge, sitting by designation; L.T. Case No. CACE19-002815.

Wayne R. Atkins of Xander Law Group, P.A., Miami, and Raoul G. Cantero and Zachary B. Dickens of White & Case LLP, Miami, for appellant.

Glenn J. Waldman and Eric C. Edison of Gunster, Fort Lauderdale, for appellee.

GROSS, J.

Anthony Perera appeals an order confirming an arbitration award and awarding appellee Bobby Genovese $600,000 in attorney's fees and costs. Perera also appeals a supplemental judgment on fees and costs.

Two circuit judges reviewed arbitration proceedings in this case. We affirm Judge Bidwill's order vacating the first arbitration award because the first arbitrator exceeded his powers in fashioning a remedy not authorized by the arbitration agreement. We also affirm Judge Francis's order confirming the second arbitration award because the second arbitrator did not exceed his powers as authorized by the arbitration agreement and the parties' stipulation.

### *The Parties' Contract and the Ensuing Dispute*

Perera and Genovese co-owned various entities that operated restaurants called "Cowboys." Perera managed the business. In a

Memorandum of Terms (the "Agreement"), Perera agreed to sell his interest in the business to Genovese.

To value the business, the Agreement required Perera to "submit the identity" of an independent evaluator to Genovese. The parties were to "cooperate to the fullest extent possible in assisting the evaluator in determining its Evaluation" of Cowboys. Once the Evaluation was complete, the Evaluation and its underlying documentation would be provided to the parties, who would then have 48 hours to review it. If one of the parties disagreed with the Evaluation, that party had to give the other party "written notice of such disagreement and provide the general basis for its disagreement." And, in the event of a disagreement with the Evaluation, Genovese would "have the right and the duty to submit the identity of another evaluator" who would conduct another third-party valuation of the business. The average of the two valuations would become the agreed-upon valuation of Cowboys.

Finally, the Agreement required disputes to be resolved by submission to arbitration before the American Arbitration Association ("AAA"), "with the requirement that the Arbitrator must designate a prevailing party and assess costs, including legal fees, against the non-prevailing party."

Perera selected the accounting firm Bennett Thrasher to prepare the Evaluation. On September 30, 2016, Perera provided Genovese with Bennett Thrasher's Evaluation which valued Perera's interest in the business at $7,551,847.

On October 2, 2016, Genovese's attorney emailed Perera's counsel and declared the Bennett Thrasher Evaluation to be "totally devoid of veracity and [] a nullity." Genovese refused to "treat that document as an Evaluation" as contemplated under the Agreement, adding that no evaluation "was ever properly obtained, nor could it be obtained because of the improper actions of your client." Genovese accused Perera of criminal activity and stated that Perera's improper conduct precluded him from conducting his due diligence.

On October 11, 2016, Perera submitted a Demand for Arbitration with the AAA.

Soon after the filing of the Demand for Arbitration, most of the Cowboys restaurants covered by the Agreement closed because they were not financially viable. Five of the restaurants closed between October 2016 and September 2017, and another closed in January 2019 after operating under a rebranded name.

## *The First Arbitration*

A. <u>The Arbitrator and the Statement of Claim</u>

Arbitrator Lawrence Saichek presided over the first arbitration. Perera's Statement of Claim alleged that the case arose out of "Genovese's breach of the Memorandum of Terms in failing to consummate the purchase of Perera's interest in the Cowboy's Saloons." Perera also alleged that Genovese had not "provided Perera with any written notice of disagreement" with the Bennett Thrasher Evaluation.

Perera sought $7,551,847 in damages plus attorney's fees and costs.

B. <u>The Evidentiary Hearing</u>

Arbitrator Saichek conducted a ten-day evidentiary hearing. At the end of the hearing, Perera's lawyer declined the opportunity to present additional evidence, stating: "We had a full and fair opportunity to present our case."

C. <u>The Interim Award</u>

Arbitrator Saichek entered an Interim Award, finding that Genovese was in breach of the Agreement but that the Bennett Thrasher Evaluation "cannot be used as a basis for determining damages." The arbitrator found "fault on the part of both parties." However, "[i]nasmuch as the intent of the Agreement was to effectuate a buy-out," the arbitrator explained, "[Genovese], rather than walking away from the Agreement his counsel prepared, should have followed its terms and at least attempted to identify another evaluator to conduct another valuation. He did not."

The arbitrator concluded that, upon receipt of the Bennett Thrasher Evaluation, Genovese "was compelled to either: a) follow the Agreement by providing written notice of his disagreement, provid[ing] a general basis for his disagreement and fulfilling his 'duty' to find another evaluator; or b) immediately file for arbitration disputing that the Evaluation was proper under the Agreement." Instead, Genovese "chose to call the Evaluation a 'nullity' – basically stonewalling the process set forth in the Agreement."

Importantly, the arbitrator concluded that "one cannot rely on the [Bennett Thrasher] Evaluation in properly valuing Cowboys." The arbitrator detailed a dozen "compelling points" to support his conclusion that the Evaluation was unworthy of belief, including Cowboys' bounced

checks, unpaid insurance, past due rent, and discussions concerning the potential of bankruptcy, none of which were disclosed to Bennett Thrasher.

After concluding that the Bennett Thrasher Evaluation "cannot be used as a basis for determining damages," the arbitrator ordered the parties to engage a new evaluator "to determine the value of Cowboys as of September 1, 2016." The arbitrator ordered that the decision of the new evaluator "shall be final."

Finally, because the Agreement required an arbitrator to designate a prevailing party, the arbitrator declared that Perera was the prevailing party.

D. The Final Award

In the Final Award, the arbitrator noted that the parties had retained the accounting firm Kaufman Rossin to perform the second evaluation. Kaufman Rossin issued a report, which the arbitrator summarized. Kaufman Rossin noted "deficiencies in the historical financial information" of Cowboys, finding "the books and records to be unreliable for many reasons." Kaufman Rossin also reviewed the Bennett Thrasher Evaluation, determining that it was flawed and that it failed "any sanity test relative to benchmark market transactions."

Relying upon the Kaufman Rossin report, the arbitrator found the value of Perera's interest in Cowboys as of September 1, 2016, to be $258,490. The arbitrator then awarded Perera this amount, plus attorney's fees and costs.

### Genovese's Motion to Vacate the First Arbitration Award, and Perera's Motion to Confirm and Modify the First Arbitration Award

Genovese moved in circuit court to vacate Arbitrator Saichek's Initial Award and Final Award (collectively the "First Arbitration Award"). Genovese argued: (1) the arbitrator exceeded his authority under the Agreement by ordering the parties to engage a new evaluator; (2) Genovese was relieved of any further duty under the Agreement because the arbitrator "effectively deemed the Bennett Thrasher Evaluation a legal nullity"; and (3) Genovese was the prevailing party due to total failure of the Bennett Thrasher Evaluation to support any damages award.

Perera moved to confirm the First Arbitration Award on liability and to modify it on damages. Perera agreed that the arbitrator exceeded his

authority by ordering the parties to obtain a new valuation, but Perera argued that the court had no legal basis to vacate the arbitration award as to liability or the determination that he was entitled to attorney's fees as the prevailing party. Perera asked the court to do one of the following: (1) modify the award so that Perera would be awarded damages of $7,551,847, the valuation determined by Bennett Thrasher; (2) modify the award so that Perera would be awarded damages of $3,905,168.50, the average of the Bennett Thrasher Evaluation and the Kaufman Rossin Evaluation; (3) remand the damages portion of the award for rehearing with instructions for the arbitrator to award either the amount of the Bennett Thrasher Evaluation or the averaged amount of the Bennett Thrasher Evaluation and the Kaufman Rossin Evaluation; or (4) order rehearing on the sole issue of damages before a new arbitrator.

### *Judge Bidwill's Order Vacating the First Arbitration Award*

Judge Bidwill vacated the First Arbitration Award in its entirety, finding that Arbitrator Saichek "exceeded his powers when he ordered an extra-contractual process for obtaining an additional evaluation, an evaluation which ultimately would be determinative of the value issue and the amount of the award."

Judge Bidwill refused "to partition the findings of the arbitrator as requested by Perera," reasoning that "[t]he presence of a 'process oriented' ground for vacating an award, such as the arbitrator exceeding his powers, warrants setting aside the whole award that resulted from a flawed arbitration process."

Judge Bidwill also declined to modify the award, as Perera's requested modification would "affect the merits of the decision and the controversy, and is certainly much more than the correction of a miscalculation or misdescription" allowed under Florida law. "Because the Court is vacating the award because of a flaw in the 'process,'" Judge Bidwill reasoned, "the arbitrator should have the opportunity to rehear the entire matter within the contractual parameters agreed to by the parties."

In sum, Judge Bidwill agreed with the parties that the arbitrator exceeded his powers. Because section 682.13, Florida Statutes (2019), requires a court upon motion to "vacate an arbitration award if . . . [a]n arbitrator exceeded the arbitrator's powers," the court ruled that it would "vacate the award in its entirety and return the case to the [AAA] for rehearing, pursuant to Fla. Stat. § 682.13(3)."

Judge Bidwill denied Genovese's motion to be declared the prevailing party for the purpose of awarding attorney's fees and costs. Judge Bidwill denied the motion because (1) the Agreement required the arbitrator to determine the prevailing party and (2) any decision as to the prevailing party was premature because the matter was not final.

### *The Rehearing Proceedings Before the AAA*

On rehearing, the AAA assigned the case to a new arbitrator, former circuit judge Thomas Lynch.

Rather than proceed with a full rehearing on remand, the parties agreed to a summary disposition, with the caveat that Perera would not waive his right to discovery or an evidentiary hearing if Arbitrator Lynch deemed further proceedings necessary. Accordingly, Perera and Genovese each filed competing summary disposition motions based upon the evidentiary record established during the prior ten-day hearing.

In Perera's summary disposition motion, he stated the parties had "stipulated that this rehearing is limited to the issue of damages." Perera argued: he fully complied with the Agreement; the Agreement did not "speak to any methodology that was required for the evaluation"; and an award should be entered in his favor as the prevailing party based on the Bennett Thrasher Evaluation, which was "the only valuation that was obtained in compliance with" the Agreement.

Genovese's summary disposition motion asked Arbitrator Lynch to enter an amended final award in his favor and declare him the prevailing party due to Perera's failure to prove damages at the previous ten-day hearing. The motion pointed to Arbitrator Saichek's determination that the Bennett Thrasher valuation was so unreliable that it could not support any valuation of the Cowboys enterprise. Genovese argued that Arbitrator Saichek exceeded his powers only when he ordered an extra-contractual process for obtaining a successor evaluation. The post-trial process-oriented error, Genovese maintained, "had absolutely no role in the Initial Arbitrator's well-supported finding that Mr. Perera failed to prove his damages and those merits can no longer be revisited."

At the hearing before Arbitrator Lynch, the parties agreed not to rehear the original arbitrator's determination with respect to liability—i.e., that Genovese had materially breached the Agreement.

The parties presented no new evidence at the hearing before Arbitrator Lynch.

Perera argued that he was entitled to the full Bennett Thrasher valuation because: (1) the Agreement only called for Perera to obtain an "evaluation"; (2) Genovese's expert conceded that the work of Bennett Thrasher was a "valuation"; and (3) the parties considered the words "valuation" and "evaluation" to be synonymous. Perera acknowledged that he received a "full and fair opportunity to present evidence" at the ten-day hearing before Arbitrator Saichek.

Genovese emphasized that the original arbitrator "found no damages." Asserting that Arbitrator Saichek's "finding of no damages should be left undisturbed," Genovese asked Arbitrator Lynch to enter an amended final award in his favor and to declare him the prevailing party "because of the failure to establish damages."

### The Second Arbitration Award

Following the hearing, Arbitrator Lynch entered an Order Granting Respondent's Amended Motion for Entry of Amended Final Award ("Second Arbitration Award"). Arbitrator Lynch concluded that "[s]ince [Perera] failed to prove damages at the final hearing, in front of the former arbitrator, [Genovese's] Amended Motion for Entry of Amended Final Award is Granted." Arbitrator Lynch noted: "The evaluation presented by [Perera] was found to have no evidentiary value, by the former arbitrator. Therefore, the evaluation could not be relied upon to prove damages."

Arbitrator Lynch also found that there was "no legal reason why [Perera] should be permitted to re-litigate his damages," as he had received "a full and fair opportunity to present evidence regarding damages." Arbitrator Lynch added: "Without success, [Perera] attempted to vacate the finding of the prior arbitrator, regarding the evaluation, in front of the prior arbitrator, as well as Judge Bidwell [sic]." Arbitrator Lynch also noted that "the prior arbitrator found that the evaluation could not be used to determine damages, because it was not reliable." Therefore, "[b]ecause damages were not proven," Arbitrator Lynch determined that Genovese was "the prevailing party."

Arbitrator Lynch later awarded Genovese $600,000 in fees and costs.

### The Circuit Court Confirms the Second Arbitration Award

Genovese moved to confirm the Second Arbitration Award and the award of fees and costs.

Perera moved to vacate those awards.

After a lengthy final hearing, Judge Francis entered a detailed final order confirming Arbitrator Lynch's arbitration awards.

First, Judge Francis reasoned that on remand to the AAA, the parties expressly agreed to establish their own "'contractual parameters' and submit the matter to Arbitrator Lynch for a summary disposition <u>without new discovery</u> and <u>without any new evidence</u>." Judge Francis emphasized that, according to Perera's summary motion before the new arbitrator, the rehearing was "limited only to the issue of damages (i.e., the purchase price by which Genovese must purchase Perera's 50% ownership interest)."

Second, Judge Francis concluded that "Arbitrator Lynch did not dispense with his own brand of 'industrial justice' in only deciding the narrow contract issue in this case -- vis, was the Bennett Thrasher evaluation which Perera advanced in the arbitration a legitimate basis upon which damages could be awarded?" The record of the rehearing, Judge Francis explained, "makes clear that Arbitrator Lynch conducted his own careful review and analysis and did not merely 'rubber stamp' the findings of Arbitrator Saichek . . . ."

Judge Francis pointed out that Arbitrator Lynch properly held Perera to the damages proof which he offered at the first arbitration: "Florida law, generally, and the ample precedent of [this court], in particular, provide that a litigant who, like Perera, fails to prove damages does not get a second bite at the apple."

Concluding that "Arbitrator Lynch did not exceed any of his arbitral powers as a matter of law," Judge Francis granted Genovese's motions to confirm Arbitrator Lynch's awards and denied Perera's petition to vacate the awards. Judge Francis entered judgment in favor of Genovese for $600,000 in fees and costs. Judge Francis later entered a stipulated supplemental final judgment awarding Genovese additional fees and costs. This consolidated appeal ensued.

### *Judge Bidwill Did Not Abuse His Discretion in Vacating the First Arbitration Award in its Entirety*

Perera first argues that Judge Bidwill erred in vacating the entirety of Arbitrator Saichek's award,[1] because "Arbitrator Saichek had exceeded his authority only in fashioning an extra-contractual remedy for Genovese's breach." Perera suggests that the proper approach would have been to "confirm the arbitrator's unchallenged findings and conclusions, and vacate only the portion of the award that exceed[ed] the arbitrator's authority." Analogizing this case to decisions where this court has reversed "erroneous judgments for a new trial on damages without disturbing the finding of liability," Perera contends that the "process-oriented" flaw in Arbitrator Saichek's award "occurred after, and was separate from, the conclusions: (1) that Genovese breached the agreement; and (2) that Perera was the prevailing party."

"The trial court's decision to confirm or vacate the arbitration award is reviewed for an abuse of extremely limited discretion." *Commc'ns Workers of Am. v. Indian River Cnty. Sch. Bd.*, 888 So. 2d 96, 99 (Fla. 4th DCA 2004).

Upon motion of a party, a court "shall vacate an arbitration award" if the arbitrator "exceeded the arbitrator's powers." § 682.13(1)(d), Fla. Stat. (2019).

Florida case law allows for partial vacatur of an arbitration award where the arbitrator exceeded his authority only as to a portion of the award. *See, e.g.*, *Boardwalk Props. Mgmt., Inc. v. Emerald Clinton, LLC*, 234 So. 3d 786, 789 (Fla. 4th DCA 2017) (reversing the trial court's failure to vacate "that portion of the arbitral award which exceeded the arbitrator's authority by determining ownership interests," but affirming the trial court's denial of vacatur as to the rest of the award); *Lake City Fire & Rescue Ass'n, Local 2288 v. City of Lake City*, 240 So. 3d 128, 130–31 (Fla. 1st DCA 2018) (affirming a trial court's decision to vacate the portion of an arbitration decision that reduced a firefighter's discipline for misconduct, as the arbitrator's authority was limited to determining whether the firefighter "engaged in the misconduct alleged").

However, those cases did not squarely address the issue of whether a trial court erred or abused its discretion by deciding to vacate an

---

[1] Judge Bidwill's order vacating the First Arbitration Award was not immediately appealable. *See Loewenstein, Inc. v. Draheim*, 898 So. 2d 1129, 1130 (Fla. 4th DCA 2005) ("No rule of the supreme court authorizes review of an order vacating an arbitration award. Such a decision becomes subject to review in a district court of appeal upon entry of a final judgment.").

arbitration award *in whole*—rather than *in part*—where some aspect of the award exceeded the arbitrator's authority.

Judge Bidwill did not abuse his discretion in vacating the First Arbitration Award in its entirety rather than attempting to carve out the portions of the award affected by Arbitrator Saichek exceeding his powers. Once a court has determined that an arbitrator has exceeded his or her powers in making a ruling, the court's decision to vacate the award either in whole or in part is a discretionary decision that turns on whether the arbitrator's other rulings are intertwined with the arbitrator's unauthorized ruling.

The issues of breach and damages were closely interrelated because both were potentially affected by the validity of the Bennett Thrasher Evaluation. If the Bennett Thrasher Evaluation were a good faith valuation, it would establish the contract price and thus the amount of damages. If the Bennett Thrasher Evaluation were a bad faith valuation, it would not have triggered any contractual duty on the part of Genovese and could not support any award of damages.

Instead of taking either of these two paths, Arbitrator Saichek thought he had the authority to fix a flawed valuation—and thus effectuate the buyout contemplated in the Agreement—by ordering a new valuation.

Arbitrator Saichek's specific criticisms of the Bennett Thrasher Evaluation called into question the integrity of the valuation and raised the specter that Perera had acted in bad faith by obtaining it without fully disclosing Cowboys' dire financial condition to Bennett Thrasher.

Arbitrator Saichek's erroneous belief that he had the authority to order the extra-contractual remedy of a new valuation may have influenced not only his determination of damages, but also his findings as to breach and the prevailing party. Arbitrator Saichek never decided whether he would have declared Perera to be the prevailing party *even if Perera recovered nothing in damages*. Although Arbitrator Saichek had found that Perera was the prevailing party before deciding the precise amount of damages, Arbitrator Saichek made that determination with the belief that Perera would be awarded *some damages*—i.e., the amount arrived at by the new evaluator.

We reject Perera's argument that a finding that a party's breach of a contract always makes the non-breaching party the prevailing party for the purpose of recovering attorney's fees, even where zero damages are

recovered.  As we will discuss below, in such a circumstance, the law takes a holistic view of the litigation rather than focusing on a detail in isolation.

We conclude that Judge Bidwill did not abuse his discretion by refraining from "wading further into the arbitral waters" when he vacated the First Arbitration Award in its entirety and declined to order specific instructions as to what the final award should look like, including the determination of the prevailing party.  The judge properly recognized that the new arbitrator should have the "opportunity to rehear the entire matter within the contractual parameters agreed to by the parties."

### *Judge Francis Did Not Abuse Her Discretion in Confirming Arbitrator Lynch's Arbitration Award*

Perera next contends that Judge Francis abused her discretion in confirming the Second Arbitration Award because Arbitrator Lynch exceeded his authority in concluding that Genovese was the prevailing party.

A significant part of that argument is Perera's claim that Arbitrator Lynch deviated from the controlling precedent that a party who proves a material breach is always the prevailing party in litigation.

Two of our cases have found that a party prevailed for the purpose of attorney's fees where a jury found a breach of contract, but awarded no damages.  *See Khodam v. Escondido Homeowner's Ass'n*, 87 So. 3d 65 (Fla. 4th DCA 2012); *Coconut Key Homeowner's Ass'n v. Gonzalez*, 246 So. 3d 428 (Fla. 4th DCA 2018), *receded from on other grounds by Sherman v. Sherman*, 279 So. 3d 188 (Fla. 4th DCA 2019).  In both cases, however, the issue of damages was insignificant.

Those cases contrast starkly with this case, which was primarily about damages.  Perera sought $7,551,847 in damages and recovered nothing.

In *Khodam*, the plaintiff brought a breach of contract action against a homeowner's association.  87 So. 3d at 66.  The jury "determined that [the association] breached a contract but awarded [the plaintiff] no damages." *Id.*  Quoting *Moritz v. Hoyt Enterprises, Inc.*, 604 So. 2d 807, 810 (Fla. 1992), we wrote that the "party who prevails 'on the significant issues in the litigation is the . . . prevailing party for attorney's fees.'" *Id.*  Under the circumstances of *Khodam*, the finding that the association had "breached its declaration of covenants" was the significant issue in the litigation.  *Id.*  Such a finding would have implications for the governance of the association going forward.

11

In *Khodam*, as with many cases brought over the exercise of a homeowner's association's powers, damages were a minor issue. This legal backdrop is key to understanding our statement that "[d]espite the absence of damages, the finding that appellee breached the contract made appellant the prevailing party on the litigation's significant issues." *Id.* (citing *Green Cos., Inc. v. Kendall Racquetball Inv., Ltd.,* 658 So. 2d 1119, 1121 (Fla. 3d DCA 1995)). This statement merely reflected our conclusion on *Khodam*'s specific facts—it was not intended as an inflexible proposition of law.[2]

We followed *Khodam* in *Coconut Key*, a case upon which Perera relies. 246 So. 3d at 433. As in *Khodam*, the plaintiff in *Coconut Key* filed an action against his homeowner's association, alleging a breach of the association's governing documents. *Id.* at 430. A jury found that the association had "breached its governing documents by failing to maintain and operate [a] surface water management system," but awarded the plaintiff no damages. *Id.* Based on the jury's finding, the court entered a permanent injunction against the association. *Id.* at 430–31.

Based on *Khodam*, we held that the plaintiff was the prevailing party for the purpose of recovering attorney's fees and costs. *Id.* at 433. We recognized that "the prevailing party is the party that won on the significant issues in litigation." *Id.* at 432. We also emphasized that the plaintiff "was required, at the least, to secure some relief on the merits of her claim to achieve [prevailing party] status." *Id.* at 434. Applying these principles, we concluded that the plaintiff "was indisputably a prevailing party on her injunctive claim in equity, regardless of her marginal victory on the breach count." *Id.*

The prevailing party determinations in both *Khodam* and *Coconut Key* turned on two factors. First, the primary issue in the litigation was whether the associations violated their governing documents. The cases primarily concerned issues of association governance, not damages.

---

[2] Notably, in *Green*, which was the legal authority for our statement in *Khodam*, the "only substantive issue" in the case was whether the defendants had breached a parking agreement. 658 So. 2d at 1121. On those facts, the Third District held that, even though the jury awarded no damages, the plaintiff was the prevailing party because it prevailed on the only significant issue in the case. *Id.* The appellate court emphasized that the trial court had fashioned equitable remedies throughout the litigation to enjoin the defendants from causing parking problems, and that the plaintiff had "procured the primary relief it originally sought when it filed the complaint . . . ." *Id.*

Second, the rulings obtained would have impacted the future interactions between homeowners and their associations.

Neither *Khodam* nor *Coconut Key* stand for the proposition that a determination of a breach of contract, standing alone, always carries with it the finding that the non-breaching party is the prevailing party for the purpose of awarding attorney's fees and costs.

Such a mechanical rule is contrary to the approach taken by the Florida Supreme Court, which since *Moritz* has taken a more flexible approach by looking to which party prevailed on the significant issues in the litigation. *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1201–02 (Fla. 2009). "The Florida Supreme Court has emphasized a flexible approach that gives the trial courts broad discretion in determining which party is the prevailing party[.]" *Skylink Jets, Inc. v. Klukan*, 308 So. 3d 1048, 1053–54 (Fla. 4th DCA 2020).

This case was primarily about damages and the shenanigans surrounding their estimation. Because Genovese completely prevailed on the most significant issue in the case, Arbitrator Lynch did not deviate at all from controlling precedent.

As noted above, a court "shall vacate an arbitration award" if the arbitrator "exceeded the arbitrator's powers." § 682.13(1)(d), Fla. Stat. (2019). An arbitrator exceeds his or her powers "when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Schnurmacher Holding, Inc. v. Noriega*, 542 So. 2d 1327, 1329 (Fla. 1989). By contrast, "[a]n award of arbitration may not be reversed on the ground that the arbitrator made an error of law." *Id.*

The Eleventh Circuit has stated that vacatur is permitted under the analogous provision of the Federal Arbitration Act "only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1237 (11th Cir. 2020) (internal quotation marks omitted). An example is when an arbitrator fails "to give preclusive effect to an issue already (and properly) decided by a court." *Id.*

The Eleventh Circuit reiterated, however, that "[a]rbitrators do not exceed their powers when they make errors, even 'a serious error.'" *Id.* (citation omitted). This court has taken the same approach. For example, in *Managed Care Insurance Consultants, Inc. v. United Healthcare Insurance Co.*, 228 So. 3d 588, 593 (Fla. 4th DCA 2017), we rejected an

argument that "the arbitrators exceeded their powers under the agreement by failing to apply controlling Florida law in denying any damage award," because this was "an attempt to disguise what is clearly a claim of legal error by the arbitration panel, which is not a ground to vacate an arbitration award."

Here, Judge Francis did not abuse her discretion in confirming the Second Arbitration Award, as Arbitrator Lynch did not exceed his authority in declaring Genovese to be the prevailing party at the conclusion of the rehearing proceedings.

Importantly, the parties' Agreement expressly required Arbitrator Lynch to declare the prevailing party. Perera attempts to analogize this case to a situation where an arbitrator fails to give preclusive effect to an issue already adjudicated. However, Arbitrator Saichek's prevailing party determination had been vacated by Judge Bidwill's order, so Arbitrator Lynch was required by the Agreement to declare a prevailing party. This is not a case where Arbitrator Lynch went beyond the authority granted by the parties and decided an issue not pertinent to the resolution of the issue submitted to arbitration.

To be sure, "[t]he effect of an order vacating an arbitration award and ordering a rehearing before another arbitration panel is the same as that of an order granting a motion for new trial[.]" *Felger v. Mock*, 65 So. 3d 625, 628 (Fla. 1st DCA 2011). Certainly, the parties could have proceeded to an entirely new evidentiary hearing after the case was returned to the AAA and Arbitrator Saichek was removed from the case.

However, rather than proceed with a full rehearing, the parties expressly agreed to submit the matter to Arbitrator Lynch for a summary disposition and to leave it to Arbitrator Lynch's discretion as to whether to hear more evidence.

The crux of Perera's argument is that Arbitrator Lynch exceeded his authority by "selectively giving preclusive effect to Arbitrator Saichek's damages findings while failing to respect his prevailing-party finding, which was 'already (and properly) decided.'"

But, short of conducting a new evidentiary hearing, Arbitrator Lynch necessarily had to rely on some of Arbitrator Saichek's findings. Given that the parties had agreed to a summary disposition on damages, Arbitrator Lynch did not exceed his authority by doing essentially the same thing that Perera suggests Judge Bidwill should have done—partitioning the portions of Arbitrator Saichek's First Arbitration Award that Arbitrator

14

Lynch did not think were affected by Arbitrator Saichek's decision to award an extra-contractual remedy.

In light of the parties' agreement to proceed to a summary disposition based upon the existing evidentiary record, Arbitrator Lynch did not exceed his authority by adopting all of Arbitrator Saichek's findings except for the extra-contractual remedy and the prevailing party determination. Arbitrator Lynch necessarily concluded that Arbitrator Saichek's prevailing party determination was not an issue that was "already (and properly) decided," at least insofar as Arbitrator Saichek's determination of the prevailing party could have been affected by his decision to award an extra-contractual remedy. Thus, the prevailing party issue needed to be reconsidered in connection with the rehearing on damages. In short, Arbitrator Lynch did not exceed his authority by making the prevailing party determination at the conclusion of the case.

Likewise, Judge Francis properly concluded that Arbitrator Lynch did not dispense with his own brand of "industrial justice" in deciding the narrow contract issue of whether the Bennett Thrasher Evaluation was a legitimate basis upon which damages could be awarded.

Perera never offered any evidence on rehearing to rebut Arbitrator Saichek's criticisms of the Bennett Thrasher Evaluation. Instead, Perera's main argument in his summary disposition motion was that an arbitrator was not entitled to challenge the veracity or reliability of the Bennett Thrasher Evaluation (no matter how flawed or frivolous it may have been) because the parties' Agreement did not require any specific methodology for the evaluation. Arbitrator Lynch did not exceed his authority in rejecting this argument.

Based on a proper reading of *Coconut Key* set forth above, Arbitrator Lynch did not exceed his authority by concluding that Perera's failure to prove damages at the original hearing rendered Genovese the prevailing party. Even if Arbitrator Lynch committed an error of law in declaring Genovese to be the prevailing party, a mere mistake of law, even a serious one, does not mean that he exceeded his powers.[3]

We affirm Judge Francis's decision to confirm Arbitrator Lynch's award.

---

[3] We do not reach the issue of the failure to award even nominal damages because Perera never requested such an award. Perera requested over $7.5 million in damages. Given that the focus of a prevailing party inquiry is on whether a party prevailed on the significant issues in the litigation, it is hard to see how an award of nominal damages would have tipped the scales in favor of Perera.

*Affirmed.*

WARNER and KUNTZ, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**